**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

--------------------------------X

UNITED STATES OF AMERICA, :

Plaintiff,

Civil Action No. 24-CV-9189

-against-

$3,435,676.57 IN UNITED STATES CURRENCY HELD IN GENERAL LEDGER ACCOUNT NO. 4050720 AT WELLS FARGO BANK, N.A., FORMERLY ON DEPOSIT IN ACCOUNT NO. 2502560838 ASSOCIATED WITH OCEAN STUDIOS CALIFORNIA LLC, AND ANY AND ALL FUNDS TRACEABLE THERETO, INCLUDING ACCRUED INTEREST,

Defendant *In Rem*

--------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF CLAIMANTS' MOTION TO DISMISS**

STEPTOE LLP
1330 Connecticut Avenue NW
Washington, D.C. 20036
(202) 429-8154
*Attorneys for Claimants*

# TABLE OF CONTENTS


INTRODUCTION ........................................................................ **Error! Bookmark not defined.**

SUMMARY OF RELEVANT FACTUAL ALLEGATIONS ........ **Error! Bookmark not defined.**

I. The *In Rem* Defendant and the Claimants ......................... **Error! Bookmark not defined.**

II. The Defendant Assets ....................................................... **Error! Bookmark not defined.**

A. The Purchase and Subsequent Sale of the Music Studio ..... **Error! Bookmark not defined.**

B. The Contents Sale ................................................. **Error! Bookmark not defined.**

C. Allegations of Ms. Shriki's Involvement in Matters Unrelated to the Subject Transactions ......................................................... **Error! Bookmark not defined.**

ARGUMENT ...................................................................... **Error! Bookmark not defined.**

I. Standard of Review ........................................................ **Error! Bookmark not defined.**

II. The Complaint Fails to Sufficiently Allege a Violation of § 1705. . **Error! Bookmark not defined.**

A. The Complaint Fails to Allege That Either Mr. Deripaska or Any Deripaska-Owned Entity Was a Recipient or Provider of Funds or Goods in Either of the Subject Transactions. ............................................ **Error! Bookmark not defined.**

B. The Complaint Fails to Allege that Either of the Subject Transactions Was "For the Benefit of" Mr. Deripaska Or Any Deripaska-Owned Entity. ................. **Error! Bookmark not defined.**

CONCLUSION ................................................................... **Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 650 Fifth Ave. & Related Props.*,
777 F. Supp. 2d 529 (S.D.N.Y. 2011)....7, 8

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....2, 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....8

*United States v. $1,399,313.74 in U.S. Currency*,
591 F. Supp. 2d 365 (S.D.N.Y. 2008)....15

*United States v. $16,037.00 United States Currency*,
No. 19-CV-1056-LJV-MJR, 2022 WL 3701197 (W.D.N.Y. Aug. 26, 2022)....15

*United States v. $32,507.00 in U.S. Currency*,
No. 14 Civ. 5118, 2014 WL 4626005 (S.D.N.Y. Sept. 16, 2014)....7

*United States v. Daccarett*,
6 F.3d 37 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, 114 Stat. 202, *as recognized in United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967*, 731 F.3d 189, 196 (2d Cir. 2013)....8

*United States v. Mondragon*,
313 F.3d 862 (4th Cir. 2002)....1, 7

*United States v. One Tyrannosaurus Bataar Skeleton*,
12 Civ. 4760 (PKC), 2012 WL 5834899 (S.D.N.Y. Nov. 14, 2012)....8

*United States v. Portrait of Wally, A Painting By Egon Schiele*,
No. 99 CIV. 9940 (MBM), 2002 WL 553532 (S.D.N.Y. Apr. 12, 2002)....12

**Statutes**

18 U.S.C. § 981(a)(1)(C)....8, 9

50 U.S.C. § 1705....1, 2, 8, 9, 10, 11, 12

**Rules and Regulations**

Fed. R. Civ. P. 12(b)....7, 8

Rule E(2) of R. for Admiralty or Maritime Claims & Asset Forfeiture Actions (1966) ........................................................................................................................7

Rule G(2) of Suppl. R. for Admiralty or Maritime Claims & Asset Forfeiture Actions ........................................................................................................................7

31 C.F.R. § 589.201 ........................................................................................................9, 11, 12

31 C.F.R. § 589.411 ........................................................................................................9, 10

**Other Authorities**

OFAC published guidance in Frequently Asked Question (FAQ) 389, https://ofac.treasury.gov/faqs/398 (last visited Feb. 24, 2025) ................................................10

## INTRODUCTION

The heightened pleading requirement applicable to civil forfeiture cases exists to protect claimants from the drastic remedy of civil forfeiture, which extinguishes property rights in the absence of criminal convictions. *See United States v. Mondragon*, 313 F.3d 862, 864 (4th Cir. 2002). Claimants Sparticle Ltd. ("Sparticle") and Pavel Ezubov ("Mr. Ezubov") (together, "Claimants") hereby move this Court for an Order dismissing the Complaint in this action because the Complaint fails to meet that exacting requirement.

Here, rather than offering a claim of civil forfeiture supported by particularized allegations establishing that the *in rem* Defendant Property is traceable to violations of the International Emergency Economic Powers Act ("IEEPA") as it purports to do, the Complaint appears to be a transparent attempt by the Government to leapfrog the Federal Rules of Criminal Procedure and litigate in a civil forum its pending criminal case against Mr. Deripaska, a matter filed on September 29, 2022, that remains in its earliest stages with no trial date in sight. In doing so, the Government seeks to expropriate nearly $3.5 million not from Mr. Deripaska, but from the Claimants, each an innocent potential interest holder in property held by an entity that severed ties from Mr. Deripaska well before the date he was designated by the Government as a Specially Designated National ("SDN").

The Complaint is fatally deficient because the Government has failed to adequately allege a claim for relief that satisfies the minimum applicable pleading standard, including failing to provide the required particularized notice of an offense that would justify forfeiture of the *in rem* defendant assets or facts that demonstrate the requisite nexus between the alleged offenses and the *in rem* defendant assets. The allegations of the Complaint do not establish that the defendant assets are "traceable" to illegal activity; instead, the Government relies on long strings of inferences

connecting irrelevant alleged wrongdoing to the assets at issue in this case. The Complaint should be dismissed in its entirety.

## SUMMARY OF RELEVANT FACTUAL ALLEGATIONS[1]

### I. The *In Rem* Defendant and the Claimants

The assets constituting the *In Rem* Defendant are funds ("Defendant Assets") held in a Wells Fargo Bank account in the name of Ocean Studios California LLC ("OS California"), a California-registered entity in good standing. ECF No. 1, Compl. ("Compl.") ¶ 18(a). OS California has a single member, Ocean Studios Limited ("Studio Ltd."), which is a British Virgin Islands entity founded in 2007. *Id.* ¶ 18(b). Nearly eleven years after Studio Ltd.'s founding, on "or about" April 6, 2018 (hereinafter "the Designation Date"), the U.S. Department of Treasury Office of Foreign Assets Control ("OFAC") designated Oleg Deripaska as an SDN pursuant to Executive Orders 13661 and 13662, which authorized such designations for individuals suspected of working on behalf of senior officials within the Government of the Russian Federation and of operating in the energy sector of the Russian Federation economy. *Id.* ¶ 13. Although the Complaint alleges that Studio Ltd.'s initial 100 shares were granted to Mr. Deripaska "on or about June 26, 2007," *id.* ¶ 18(b), there is no allegation indicating who owned those shares, or any other subsequently issued shares of Studio Ltd., ***as of the Designation Date***; to the contrary, the Complaint itself alleges that Hospina Limited ("Hospina") took control of Mr. Deripaska's shares of Studio Ltd., as well as any other Studio Ltd. shares that may have been issued by the Designation Date. *Id.* ¶ 18(c). Nowhere does the Complaint allege that Hospina is owned or controlled by Mr. Deripaska. As alleged, Claimant Pavel Ezubov has been Studio Ltd.'s sole director since Studio

---

[1] Though the facts in the Complaint must be accepted as true for the purposes of a motion to dismiss, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), each of the Claimants disputes any allegation, inference or suggestion of their involvement with or knowledge of any violations of the International Emergency Economic Powers Act or any other law.

Ltd.'s formation back in 2007, *id.* ¶ 18(b), and he was the Ultimate Beneficial Owner of all Studio Ltd.'s shares on or before April 27, 2018.

Claimant Sparticle Ltd. ("Sparticle") was the intended recipient of the attempted transfer of the Defendant Assets that was ultimately blocked by Wells Fargo. *Id.* ¶¶ 18(aa),(dd).

## II. The Defendant Assets

At its core, the Complaint alleges that the Defendant Assets are subject to forfeiture because they are the proceeds from the sale of a "Music Studio and its contents," owned and operated by OS California, which "were blocked property sold after the Designation Date in violation of sanctions." *Id.* ¶ 20. The Complaint thus alleges two violative transactions that comprise the Defendant Assets: (1) the sale of the Music Studio itself in December 2019 (hereinafter the "Studio Sale"), the net proceeds of which were $3,100,909.89, *id.* ¶ 18(y)&(z), which is the vast majority of the Defendant Assets; and (2) the preceding sale of "the contents of the Music Studio in the summer of 2019 in excess of $500,000," (hereinafter the "Contents Sale"). *Id.* ¶ 18(v).

### A. The Purchase and Subsequent Sale of the Music Studio

In approximately January 2008, still over ten years prior to the Designation Date, OS California purchased a music studio in Burbank, California. Compl. ¶ 18(a). The Complaint alleges, in patently conclusory fashion, that "[a]s described in more detail below, before and after the Designation Date, Shriki and Ezubov, among others, helped to operate and fund the Music Studio on behalf of Mr. Deripaska, and made clear that Mr. Deripaska was the ultimate decisionmaker with regard to the Music Studio." *Id.* ¶ 18(f). However, in the paragraphs purporting to offer "more detail below," the Complaint offers only allegations of communications suggesting Mr. Deripaska's interest in the Music Studio ***from February 2014 through March***

***2016, more than two years prior to the Designation Date***, *id.* ¶¶ 18(g)–(j); the Complaint offers no particularized facts similar to these occurring ***after*** the Designation Date.

Later, "[i]n a separate Declaration of Trust, dated April 27, 2018, *i.e.*, several weeks following the Designation Date, an entity named Hospina Limited in the British Virgin Islands, took control of the shares of Studio Ltd." *Id.* ¶ 18(c). The Complaint does not allege from whom Hospina took control of the Studio Ltd. shares, or who owned any of Studio Ltd.'s shares at that time. The Complaint further alleges that Claimant Mr. Ezubov signed the Declaration of Trust "as the Ultimate Beneficial Owner" of the Studio Ltd. shares now controlled by Hospina. *Id.* The Complaint does not allege that Mr. Deripaska is connected to Hospina in any way.

As further alleged, in 2019, an individual named Olga Shriki began to assist with the sale of OS California's music studio in a number of ways, including "preparing the property for sale, coordinating with the accounting firm for the Music Studio, communicating with the real estate broker to approve the sale, facilitating the payment of outstanding taxes and bills for the Music Studio, signing over the property deed, and liquidating the other assets in the Music Studio." *Id.* ¶ 18(s). The Complaint again describes emails involving Ms. Shriki that it alleges, in conclusory fashion, indicate that the sale of the Music Studio was "for the benefit of [Mr.] Deripaska," *id.* ¶ 18(u), but every email described in the Complaint to support this conclusion refer to events ***prior to the Designation Date***. Again, the Complaint fails to offer specific alleged facts that Mr. Deripaska was receiving any benefit from the Music Studio ***after the Designation Date***. Instead, the Government points to the involvement of Ms. Shriki's consulting company, Global Consulting Services ("GCS") in the sale of the Music Studio. The Complaint alleges that Ms. Shriki created GCS "approximately three months after OFAC designated [Mr.] Deripaska as an SDN," and through GCS "coordinated with associates of Deripaska . . . to continue providing services to and

for the benefit of Deripaska and to continue receiving funds from Deripaska or entities controlled by Deripaska." *Id.* ¶ 18(n). The Complaint further alleges that Mr. Ezubov authorized GCS "to represent and sign on behalf of the Music Studio in all transactions related to the sale of the studio, building, and equipment." *Id.* ¶ 18(w). The Music Studio was sold in December 2019 to an unnamed buyer. *Id.* ¶ 18(y).

**B. The Contents Sale**

The Complaint additionally alleges that Ms. Shriki "effectuated a sale of the contents of the Music Studio in the summer of 2019 in excess of $500,000," which, as discussed *supra*, is alleged to be included in the Defendant Assets. *Id.* ¶ 18(v). The Complaint does not identify the purchaser of the Music Studio's contents, referring only to a purchase agreement between OS California and "a buyer." *Id.* ¶ 18(v).

The same paragraph alleges that, around the same time of the Contents Sale, the account held by GCS received two credits from an unnamed source totaling $510,500 "with descriptions that referenced payment for work done for Ocean Studios California LLC." *Id.* Notably, the Complaint does not allege that these funds came from Mr. Deripaska or any entity associated with him. And despite offering allegations that GCS was used by Ms. Shriki to "continue[] providing services to and for the benefit of Deripaska and to continue receiving funds from Deripaska or entities controlled by Deripaska," *id.* ¶ 18(n), the Complaint does not allege any specific facts establishing that GCS's ***sole purpose*** was the alleged continued provision of services to or receipt of funds from Mr. Deripaska, or that GCS's alleged work done on behalf of OS California for which it received the two credits in June 2019 was done specifically for Mr. Deripaska's (or any of his alleged blocked properties') benefit, as opposed to the benefit of Mr. Ezubov, who at that

point was, as the Complaint recognizes, the sole ultimate beneficial owner of Studio Ltd., which in turn was OS California's sole owner. *See id.* ¶ 18(b)&(c).

Notwithstanding these insufficient and conclusory allegations, the Complaint concludes that "there exists probable cause to believe that the Music Studio and its contents were blocked property sold after the Designation Date in violation of sanctions, and that the balance of funds in the Ocean Studios Account transferred by Wells Fargo to the General Ledger Account are the proceeds of that violation." *Id.* ¶ 20.

### C. Allegations of Ms. Shriki's Involvement in Matters Unrelated to the Subject Transactions

In addition to the transactions that allegedly give rise to basis for civil forfeiture in this case, the Complaint is rife with details regarding Ms. Shriki's alleged work for Mr. Deripaska unrelated to the Music Studio sale—and therefore irrelevant to the forfeiture—for which Ms. Shriki is under separate indictment. *See* ECF No. 1-1. These include allegations that Ms. Shriki assisted Mr. Deripaska's partner in coming to the United States for the birth of their first and second children "in or about" 2020 and 2022, respectively, and "orchestrated hundreds of thousands of dollars' worth of U.S. medical care, housing, childcare, and other logistics to aid" in these efforts," Compl. ¶¶ 16(b)(ii)-(iv), as well as purchasing various "products" for Mr. Deripaska's personal use between "in or about 2018 and in or about 2020," *id.* ¶ 16(b)(v).

Additionally, the Complaint repeats allegations from Ms. Shriki's indictment that several properties originally purchased by Mr. Deripaska were maintained and managed by a company named Gracetown, and that after the Designation Date, "individuals associated with and/or entities controlled by Deripaska transmitted millions of dollars to bank accounts held by Gracetown Inc. in Manhattan for the upkeep of the U.S. Properties and for the benefit of Deripaska." *Id.* ¶ 16(b)(vi).

The Complaint provides no fact suggesting that Ms. Shriki's assistance with the alleged births and purchases for Mr. Deripaska, or the transmissions to Gracetown by unidentified individuals and entities "associated" with Mr. Deripaska, are alleged to have any connection to the maintenance or sale of the Music Studio.

## **ARGUMENT**

### I. Standard of Review

"Motions to dismiss *in rem* forfeiture actions are governed by Federal Rule of Civil Procedure 12(b) and Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions." *In re 650 Fifth Ave. & Related Props.*, 777 F. Supp. 2d 529, 541 (S.D.N.Y. 2011); *see also* Fed. R. Civ. P. 12(b); Rule G of the Suppl. R. for Admiralty or Maritime Claims & Asset Forfeiture Actions (the "Supplemental Rules" or "Suppl. R."). Of the Rule G pleading requirements, the critical one is Rule G(2)(f), which requires the Government to "state ***sufficiently detailed facts*** to support a reasonable belief that the Government will be able to meet its burden of proof at trial." *United States v. $32,507.00 in U.S. Currency*, No. 14 Civ. 5118, 2014 WL 4626005, at *1 (S.D.N.Y. Sept. 16, 2014) (emphasis added).

As of December 1, 2006, the pleading standard of Rule G(2)(f) supplemented the standard previously set out in Supplemental Rule E(2), which imposed the more forgiving pleading requirement that a civil forfeiture complaint only state the Government's claims with "such particularity" that the claimant could, "without moving for a more definite statement, [] commence an investigation of the facts and [] frame a responsive pleading." Suppl. R. E (1966) (subsequently replaced with Suppl. R. G(2) on December 1, 2006). Rule G(2) was implemented in recognition of *Mondragon's* statement that parties whose property was targeted for civil forfeiture were entitled to be free from the threat of a government taking of their property on the basis of "'conclusory allegations and dubious circumstances'." *See* Suppl. R. G, advisory comm.'s note

(citing *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002)). Rule G(2)'s newly heightened pleading standard is therefore critical in forfeiture cases, both in order to curb the potential of civil forfeiture abuse, *see In re 650 Fifth Ave. & Related Props*, 777 F. Supp. 2d at 542, and because civil forfeiture is widely recognized as a "drastic remedy." *United States v. Daccarett*, 6 F.3d 37, 47 (2d Cir. 1993), *superseded by statute on other grounds*, Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106–185, 114 Stat. 202, *as recognized in United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N01967*, 731 F.3d 189, 196 (2d Cir. 2013); *see also United States v. One Tyrannosaurus Bataar Skeleton*, 12 Civ. 4760 (PKC), 2012 WL 5834899, at *3 (S.D.N.Y. Nov. 14, 2012) (The "more stringent" burden is an "implicit accommodation to the drastic nature of the civil forfeiture remedy.").

Of course, on a motion to dismiss under Rule 12(b)(6), a court must also assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court need not credit "a legal conclusion couched as a factual allegation." 556 U.S. at 678. Thus, a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. The plausibility standard is met only when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Here, the Complaint fails to allege "sufficiently detailed facts" that, even if treated as true, would establish that the Defendant Assets are traceable to the alleged violations of 50 U.S.C. § 1705. It must therefore be dismissed.

## II. The Complaint Fails to Sufficiently Allege a Violation of § 1705.

It is not disputed that the Government can state a civil forfeiture claim under 18 U.S.C. § 981(a)(1)(C), as it seeks to do here, if it can sufficiently allege a violation of 50 U.S.C. § 1705,

otherwise known as IEEPA. IEEPA prohibits a person from either violating or conspiring to violate "any license, order, regulation, or prohibition issued under this chapter." 50 U.S.C. § 1705(a). Here, although the Complaint refers only vaguely to the sale of the Music Studio and its contents being "in violation of sanctions" (Compl. ¶ 20) and fails to cite the specific provisions violated by these transactions, it appears that the relevant prohibitions are those set forth in 31 C.F.R. § 589.201, which prohibits:

> (1) The making of any contribution or provision of funds, goods, or services by, to, or for the benefit of any person whose property and interests in property are blocked pursuant to paragraph (a) of this section; and
>
> (2) The receipt of any contribution or provision of funds, goods, or services from any person whose property and interests in property are blocked pursuant to paragraph (a) of this section.

31 C.F.R. § 589.201(b); *compare with* Compl. ¶ 18(n) (alleging that Ms. Shriki, through GCS, continued "***providing services to and for the benefit of*** Deripaska and [] ***receiving funds from*** Deripaska or entities controlled by Deripaska") (emphases added), *and id*. ¶ 19 (alleging that "[w]illfully transacting with, on behalf of, or ***for the benefit of***, an individual or entity on the SDN list without first obtaining a license from OFAC is a criminal violation of IEEPA") (emphasis added and citations omitted). The Ukraine-Related sanctions regulations, which were issued to enforce the executive orders under which Mr. Deripaska was sanctioned, also provide that a person whose property and interest in property is blocked pursuant to the Ukraine-/Russia Related Executive Orders is treated as having an interest in all property and interests in property of any entity in which the person owns, directly or indirectly, a 50 percent or greater interest. 31 C.F.R. § 589.411.

Thus, to state a violation of § 1705 in this case, and therefore a civil forfeiture claim under § 981(a)(1)(C), the Complaint must allege sufficiently detailed facts establishing that the Studio Sale and the Contents Sale (together, the "Subject Transactions"), which are alleged to comprise the totality of the Defendant Assets, amounted to (1) the making of (or a conspiracy to make) a "provision" of any "funds" or "goods" by, to, or for the benefit of Mr. Deripaska or any person or entity in which he owns, directly or indirectly, a 50% or greater interest (hereinafter collectively the "Deripaska-Owned Entities"), or (2) the receipt of (or conspiracy to receive) any contribution or provision of any funds from Mr. Deripaska or Deripaska-Owned Entities.[2]

The Complaint's allegations fall short of sufficiently alleging § 1705 violations as to either of the Subject Transactions because they do not offer "sufficiently detailed facts" that would, if true, establish that (1) either Mr. Deripaska or any other Deripaska-Owned Entity was a party to either of the Subject Transactions, or (2) either of the Subject Transactions provided any funds for the benefit of Mr. Deripaska or any other Deripaska-Owned Entity.[3]

### A. The Complaint Fails to Allege That Either Mr. Deripaska or Any Deripaska-Owned Entity Was a Recipient or Provider of Funds or Goods in Either of the Subject Transactions.

As alleged, the seller in both the Studio Sale and the Contents Sale was OS California. Compl. ¶¶ 18(v), (y). As to both of the Subject Transactions, the Complaint does not identify the

---

[2] Although the Complaint uses "owner" or "controlled" alternatively, it is ownership—not control—that is determinative of whether and property is blocked, according to OFAC. *See* 31 C.F.R. § 589.411; *see also*, OFAC published guidance in Frequently Asked Question (FAQ) 389, https://ofac.treasury.gov/faqs/398 (last visited Feb. 24, 2025) (in relevant part): Does OFAC consider entities over which one or more blocked persons exercise control, but of which they do not own 50 percent or more in the aggregate, to be blocked pursuant to OFAC's 50 Percent Rule? No. OFAC's 50 Percent Rule speaks only to ownership and not to control. An entity that is controlled (but not owned 50 percent or more) by one or more blocked persons is not considered automatically blocked pursuant to OFAC's 50 Percent Rule. OFAC may, however, designate the entity under an available sanctions criteria or otherwise identify the entity as blocked property if determined to be controlled by one or more designated persons and add the entity to OFAC's List of Specially Designated Nationals and Blocked Persons (SDN List).

[3] For the same reasons the Complaint cannot establish that either of the Subject Transactions violated § 589.201, it cannot establish a conspiracy to violate that regulation.

buyer. *Id*. Without identifying either buyer, the Complaint most certainly cannot establish that either Mr. Deripaska or a Deripaska-Owned Entity was a recipient of the "goods" involved in each transaction (*i.e.*, the Music Studio or its contents), or that they were the provider of the "funds" involved in each transaction. Moreover, the Complaint does not allege that Mr. Deripaska himself was either the "provider" of the Music Studio or its contents after the Designation Date or the "recipient" of the sale proceeds. Therefore, to establish that the Subject Transactions violated § 589.201(b) of IEEPA through the provision of goods or receipt of funds to a Deripaska-Owned Entity, the Complaint must allege that OS California, as the provider of the "goods" and recipient of the "funds" in each Subject Transaction was, at the time, a Deripaska-Owned Entity.

The Government's allegations fall far short of establishing this critical fact. Although the Complaint alleges that OS California was, as of June 2007, owned by Studio Ltd., and that the initial 100 shares of Studio Ltd. were issued "in favour of Oleg Vladimirovich Deripaska," Compl. ¶ 18(b), it does not allege that Mr. Deripaska or any Deripaska-Owned Entity owned ***any*** shares, let alone 50% or greater of the total Studio Ltd. shares issued, as of the time of either the Contents Sale or the Studio Sale. Indeed, the Complaint establishes that as of April 27, 2018, an entity called Hospina "took control of the shares of Studio Ltd.," and Mr. Ezubov "signed as the Ultimate Beneficial Owner." *Id*. ¶ 18(c). And the Government does not allege that Hospina ever relinquished its control of the Studio Ltd. shares or that Mr. Ezubov ever ceased being Studio Ltd.'s Ultimate Beneficial Owner, either at the time of the Subject Transactions or thereafter. Moreover, the Complaint does not allege that Hospina was either directly or indirectly owned by Mr. Deripaska or a Deripaska-Owned Entity at any time, let alone at the time of the Subject Transactions.

Accordingly, the Complaint fails to allege with sufficiently detailed facts that either of the Subject Transactions constituted the making of a provision of funds or goods by or to, or the receipt of goods or funds from, Mr. Deripaska or any Deripaska-Owned Entity after the Designation Date.

### B. The Complaint Fails to Allege that Either of the Subject Transactions Was "For the Benefit of" Mr. Deripaska Or Any Deripaska-Owned Entity.

Without establishing that Mr. Deripaska or any Deripaska-Owned Entity was on either side of either of the Subject Transactions, the Government, in order to establish a violation of § 589.201(b), must allege sufficiently detailed facts establishing that the Subject Transactions were "for the benefit of" Mr. Deripaska or a Deripaska-Owned Entity. The Complaint fails on this count as well.

Although there is no case law that Claimants could identify offering authoritative guidance on what "for the benefit of" means in § 589.201(b),[4] the Complaint fails to allege facts, direct or circumstantial, sufficiently detailed to establish that either Mr. Deripaska or a Deripaska-Owned Entity, at the time of the Subject Transactions, "benefitted," in any sense of that term's meaning, from the proceeds received by OS California in either the Content Sale in June 2019 or the Studio Sale in December 2019.

The Complaint instead attempts to establish circumstantially that the Subject Transactions "benefitted" Mr. Deripaska by alleging numerous communications involving Ms. Shriki and Mr. Ezubov that refer to Mr. Deripaska as the final decision-maker for the Music Studio, and to the Music Studio as Mr. Deripaska's business. *See* Compl. ¶¶ 18(g)-(j) & (u). But all but one of those

[4] The absence of any controlling authority construing the contours of the phrase "for the benefit of" leaves § 589.201(b) ambiguous. Because this provision serves as the alleged basis for a criminal offense under 50 U.S.C. § 1705, the Court should therefore construe this phrase narrowly, under the rule of lenity, even in the context of this civil proceeding. *See United States v. Portrait of Wally, A Painting By Egon Schiele*, No. 99 CIV. 9940 (MBM), 2002 WL 553532, at *27 (S.D.N.Y. Apr. 12, 2002) (acknowledging that the rule of lenity applies to civil forfeiture cases).

alleged communications occurred ***prior to the Designation Date***; the last email from Mr. Ezubov or Ms. Shriki suggesting that Mr. Deripaska had any remaining role in the Music Studio was in 2016. *See* Compl. ¶ 18(g) (quoting email from "in or about February 2014"); *id*. ¶ 18(h) (same); *id*. ¶ 18(i) (quoting email from "on or about September 26, 2014"); *id*. ¶ 18(j) (quoting email from "[i]n or about March 2016"). The only email to which the Government points as indicating Deripaska's control over the Music Studio that was sent after the Designation Date was an email exchange "on or about June 11, 2019" between Ms. Shriki and an unidentified musician seeking compensation for lost belongings in the Music Studio, in which the musician "expressed that ***in the past***, reimbursement for lost belongings would come from 'our friend (O) and that he ["O"] would be writing the restitution check and I [the artist] would be the payee.'" (*Id*. ¶ 18(u) (emphasis added)). However, the Complaint does not—and apparently cannot—identify when "in the past" reimbursement for lost belongings came from Mr. Deripaska, and the only plausible inference to be drawn from this allegation is that these reimbursements came from Mr. Deripaska during the time he did have an interest in OS California, before Mr. Ezubov became its Ultimate Beneficial Owner and before Hospina took control of Studio Ltd.'s shares. *See* Compl. ¶ 18(c). That the musician's reference to "the past" most plausibly references a period prior to Mr. Ezubov's ownership of Studio Ltd. (and by extension OS California) is confirmed by Ms. Shriki's alleged response to the musician, which simply asks for a list of the lost property and does not indicate any confirmation that Mr. Deripaska would be the person to pay the reimbursement. *Id*.

Nor can the Complaint establish that the Subject Transactions were for Mr. Deripaska's benefit through the attempt to transfer the Subject Transactions' proceeds to an account held by Sparticle. *See* Compl. ¶ 18(aa). As to Sparticle's ownership, the Complaint alleges only that as of on or before January 2017, Compl. ¶ 18(e)—i.e. prior to the Designation Date—Mr. Deripaska

was the "ultimate controlling party" of Sparticle. And although it alleges that "five transfers [to OS California] in 2018 and 2019 totaling in excess of $180,000 came from a Russian bank account held under the name Sparticle," *id.* ¶¶ 18(e), (p), it does not allege that Mr. Deripaska continued to be the "ultimate controlling party" of or to otherwise have any direct or indirect control over Sparticle after the Designation Date. These allegations are therefore insufficient to establish that the attempt to transfer the Subject Transactions' net proceeds to Sparticle was for the benefit of Mr. Deripaska or any Deripaska-Owned Entity.

The Complaint also attempts to suggest a "benefit" to Mr. Deripaska via the Subject Transactions through allegations concerning the involvement of GCS, Ms. Shriki's consulting firm, in those transactions. Specifically, the Complaint alleges that Ms. Shriki "assisted with the sale of the Music Studio . . . in various ways," and describes a payment made to the GCS account in June 2019 "with descriptions that referenced payment for work done for Ocean Studios California, LLC." Compl. ¶¶ 18(s), (v). But the Complaint does not even nominally connect these payments to Mr. Deripaska or any entity associated with Deripaska, and there are no allegations at all regarding where the payments were initiated and on whose behalf they were made. And although the Complaint alleges that Ms. Shriki created GCS "approximately three months after OFAC designated Deripaska as an SDN," and avers, albeit in conclusory fashion, that she "continue[d] providing services to and for the benefit of Deripaska and to continue receiving funds from Deripaska or entities controlled by Deripaska," *id.* ¶ 18(n), it offers no specific facts suggesting that Ms. Shriki and GCS were working ***exclusively*** for Mr. Deripaska. Indeed, with any specific facts supporting this averment tellingly absent from the Complaint, the only plausible inference to be drawn from these allegations is that Ms. Shriki and GCS's services for the Music Studio and OS California were for the benefit of Mr. Ezubov as the ultimate owner of the business

as of April 2018, and not Mr. Deripaska, whose alleged ownership and control of the business was of an unknown percentage, and in event ceased well before that.

In an apparent attempt to fill the gap left by the absence of any alleged fact directly establishing that the net proceeds were for Mr. Deripaska's benefit, the Complaint also alleges other atmospherics related to Ms. Shriki's continued involvement with Mr. Deripaska in matters unrelated to the Music Studio. However, none of those facts, either individually or collectively, is sufficient to establish that the Subject Transactions were for Mr. Deripaska's benefit. Specifically, the Complaint describes the details of Ms. Shriki's indictment unrelated to OS California or the Music Studio, Compl. ¶¶ 16(a–b), and alleges that Ms. Shriki's GCS account "received funding from Deripaska" unrelated to OS California or the Music Studio, which Ms. Shriki allegedly used in the process of assisting Mr. Deripaska's partner give birth in the United States. *Id.* ¶ 18(r). By failing to directly tie the Music Studio sale to Mr. Deripaska, the Complaint impermissibly asks the Court to draw several layers of inferences to conclude that Ms. Shriki's assistance to Mr. Deripaska in other ways, for which Ms. Shriki is under separate criminal indictment, means that *all* of Ms. Shriki's actions and financial transactions—and all transactions and business related to GCS—can be attributed to Mr. Deripaska's benefit or instruction. *See id.* ¶¶ 18(r)–(t). This fails Rule G's heightened requirement that forfeiture complaints be pleaded with particularity. *See United States v. $16,037.00 United States Currency*, No. 19-CV-1056-LJV-MJR, 2022 WL 3701197, at *7 (W.D.N.Y. Aug. 26, 2022) (dismissing complaint because atmospheric allegations suggesting an "inference of criminality" did not sufficiently plead an underlying violation justifying forfeiture).

These failures doom the Complaint's allegation that the proceeds from the Subject Transactions somehow benefitted Mr. Deripaska or any Deripaska-Owned Entity, such that the

funds are lawfully subject to civil forfeiture. *United States v. $1,399,313.74 in U.S. Currency*, 591 F. Supp. 2d 365, 375–76 (S.D.N.Y. 2008) (dismissing forfeiture complaint where the government, by opposing claimants' motion, "ask[ed] the Court to ignore the absence of allegations" that may bring the seized funds under the ambit of the statute authorizing forfeiture).

## CONCLUSION

For the reasons set out above, the Government has failed to state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial with respect to any of the claims for relief alleged in the Complaint. The Complaint should be dismissed.

Dated: February 24, 2025

Respectfully submitted,

/s/ *Patrick F. Linehan*

Patrick F. Linehan
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, D.C. 20036
(202) 429-8154
PLinehan@steptoe.com

*Attorneys for Claimants*

**CERTIFICATE OF SERVICE**

I, Patrick F. Linehan, an attorney, hereby certify that on February 24, 2025, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's ECF system upon all counsel of record.

*/s/ Patrick F. Linehan*
Patrick F. Linehan

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)**

I, Patrick F. Linehan, an attorney, hereby certify that Claimants' Memorandum of Law in Support of Claimants' Motion to Dismiss the Complaint complies with Local Rule 7.1(c) by not exceeding 8,750 words. The total number of words in the aforementioned Memorandum of Law is 4,811.

*/s/ Patrick F. Linehan*
Patrick F. Linehan