UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                                    :

UNITED STATES OF AMERICA

                                    :

        - v. -                     24 Civ. 9189 (RA)

                                    :

$3,435,676.57 IN UNITED STATES
CURRENCY HELD IN GENERAL LEDGER
ACCOUNT NO. 4050720 AT WELLS FARGO  :
BANK, N.A., FORMERLY ON DEPOSIT IN
ACCOUNT NO. 2502560838 ASSOCIATED  :
WITH OCEAN STUDIOS CALIFORNIA LLC,  :
AND ANY AND ALL FUNDS TRACEABLE
THERETO, INCLUDING ACCRUED  :
INTEREST;

                                    :

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## UNITED STATES OF AMERICA'S OPPOSITION TO
## CLAIMANTS' MOTION TO DISMISS

JAY CLAYTON
Attorney for the United States
Southern District of New York

Vladislav Vainberg
Assistant United States Attorney
      *- Of Counsel -*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

I. BACKGROUND .................................................................................................................1

II.    ARGUMENT ................................................................................................................... 8

    A.    Standard of Review ...................................................................................... 8

    B.    The Complaint Sufficiently Alleges that the Sale Proceeds are Forfeitable as Proceeds

    of IEEPA Violations ............................................................................................10

    C.    The Claimants' Arguments Lack Merit.......................................................................11

CONCLUSION.........................................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*Braden v. Wal–Mart Stores, Inc.*,
   588 F.3d 585 (8th Cir. 2009) ................................................................................ 14

*In re 650 Fifth Ave. & Related Properties*,
   08 Civ. 10934 (RJH), 777 F. Supp. 2d 529 (S.D.N.Y. 2011) ............................... 8

*Kaley v. United States*,
   571 U.S. 320 (2014) ............................................................................................. 14

*Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*,
   2019 WL 8892585 (C.D. Cal. Dec. 20, 2019) ..................................................... 14

*United States v. $506,069.09 Seized from First Merit Bank*,
   664 F. App'x 422 (6th Cir. 2016) .......................................................................... 9

*United States v. $5,988,031.33*,
   12 Civ. 2289 (JTF), 2014 WL 1338889 (W.D. Tenn. Mar. 28, 2014) .................. 9

*United States v. $601,426.19 of Funds Associated With Dynapex Energy Ltd.*,
   24 Civ. 542 (JMC), 2024 WL 4854310 (D.D.C. Nov. 21, 2024) ........................ 8

*United States v. $22,173.00*,
   08 Civ. 1993 (SAS), 716 F. Supp. 2d 245 (S.D.N.Y. 2010) .............................. 9

*United States v. All Funds on Deposit Held in the Name of Jaeggi*,
   05 Civ. 3971 (SJF), 2007 WL 2114670 (E.D.N.Y. July 16, 2007) ..................... 9

*United States v. Aguilar*,
   782 F.3d 1101 (9th Cir. 2015) .............................................................................. 8

*United States v. All Funds on Deposit in United Bank of Switzerland*,
   188 F. Supp. 2d 407 (S.D.N.Y. 2002) ................................................................ 10

*United States v. Any & All Funds on Deposit in Acct. No. 0139874788*,
   13 Civ. 7983 (KPF), 2015 WL 247391 (S.D.N.Y. 2015) .................................. 9

*United States v. M/Y Amadea*,
   23 Civ. 9304 (DEH), 770 F. Supp. 3d 558 (S.D.N.Y. 2025) ....................... 11-12

*United States v. Park*,
   825 F. Supp. 2d 644 (D. Md. 2011) .................................................................... 12

**Statutes**

18 U.S.C. § 981 ......................................................................................................... 1, 10

18 U.S.C. § 983 ......................................................................................................... 8, 9

50 U.S.C. § 1705 ................................................................................................................ 1-3

**Other**

31 C.F.R. § 589.201 .......................................................................................................... passim

31 C.F.R. § 589.210 ................................................................................................................ 6


Supp. R. G for Admiralty or Maritime Cl. and Asset Forfeiture Actions ............................... 8, 9

## PRELIMINARY STATEMENT

Plaintiff United States of America (the "Government") respectfully requests that this Court deny Claimants' motion to dismiss the Verified Civil Complaint for Forfeiture,[1] which seeks to forfeit the proceeds of the sale of a music studio ("Music Studio") previously owned by sanctioned Russian oligarch Oleg Deripaska.[2]  As set forth in more detail below, the Complaint incorporates and supplements specific facts from a criminal Indictment charging Deripaska with a conspiracy to violate sanctions by employing a U.S. person—charged co-conspirator Olga Shriki—to conduct multiple financial transactions in the United States on his behalf.  The Complaint plausibly details how after Deripaska's designation, Shriki unlawfully continued working for Deripaska to sell Deripaska's Music Studio and its contents, and then attempted to expatriate the proceeds to a Russian bank account belonging to a Deripaska-controlled entity.  Accordingly, the Complaint provides probable cause to believe that the Defendant-*in-rem*, comprised of $3,435,676.57 in sale proceeds at a blocked bank account, is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), as proceeds of violations of and conspiracies to violate 50 U.S.C. § 1705, Executive Orders 13660, 13661, and 13662 and Title 31, Code of Federal Regulations § 589.201 (the International Emergency Economic Powers Act ("IEEPA")), and orders and regulations issued thereunder pertaining to the national emergency with respect to Ukraine. Claimants' sole argument in support of dismissal—that the Complaint fails to sufficiently allege any violation of IEEPA—ignores the well-pled factual allegations in the Complaint. As such, Claimants' motion should be denied.

---

1 Claimants' memorandum in support of the motion to dismiss (ECF No. 15) is cited as "Def. Mem.".  The Complaint (ECF No. 1) is cited as "Compl."

2 In filing this opposition brief, the United States does not concede that Claimants have standing in this case.

## I.    BACKGROUND

On December 2, 2024, the Government filed a Verified Complaint for Forfeiture seeking the forfeiture of the Defendant-*in-rem*, specifically, $3,435,676.57 in United States currency held in general ledger account no. 4050720 at Wells Fargo Bank, N.A., formerly on deposit in account no. 2502560838 associated with Ocean Studios California LLC (the "Ocean Studios Account"), and any and all funds traceable thereto, including accrued interest.  The Complaint incorporates and appends as an exhibit S1 Indictment 22 Cr. 518, unsealed on September 29, 2022, through which a grand jury sitting in the Southern District of New York, charged Oleg Deripaska, Olga Shriki, and Natalia Mikhaylovna Bardakova with, *inter alia*, a conspiracy to violate sanctions in violation of 50 U.S.C. § 1705 and the Ukraine-Related Sanctions Regulations (the "Deripaska Indictment", "Ind.").[3]

The Complaint establishes a clear, specifically-pled nexus between the charged conspiracy to the Defendant-*in-rem* as proceeds of the IEPPA conspiracy.  It pleads that Deripaska, along with his management company Basic Element, were designated on April 6, 2018 (the "Designation Date") pursuant to Executive Order 13661 and 13662 (the "Ukraine-Related Executive Orders").  (Compl. ¶ 5-13); *see also* OFAC, *Treasury Designates Russian Oligarchs, Officials, and Entities in Response to Worldwide Malign Activity* (April 6, 2018), available at https://home.treasury.gov/news/press-releases/sm0338 ("Designation Notice").  Deripaska's designation blocked, and made it unlawful to transact in, any of Deripaska's property and interests in the United States without a license, *see* 31 C.F.R. § 589.201(a) (prohibiting transfers in property in the United States of any person designated under Executive Order 13660, 13661, and 13662),

---

3 The Complaint also appends as Exhibit B a separate indictment (the "Bonham-Carter Indictment") against a different co-conspirator of Deripaska with allegations tying particular entities to Deripaska, among other things.

and furthermore made it unlawful for any U.S. person to "mak[e] . . . any contribution or provision of funds, goods, or services by, to, or for the benefit of" Deripaska, 31 C.F.R. § 589.201(b)(1), or to "recei[ve] any contribution or provision of funds, goods, or services" from Deripaska 31 C.F.R. § 589.201(b)(2).[4]  Willfully transacting with, on behalf of, or for the benefit of, an individual or entity on the SDN List without first obtaining a license from OFAC is a criminal violation of IEEPA, 50 U.S.C. §§ 1705(a) & (c).

In returning the Deripaska Indictment, a grand jury found probable cause to conclude that for over four years after Deripaska was sanctioned in April 2018, U.S. citizen Olga Shriki worked for Deripaska to provide services for his benefit in the United States, and was paid by Deripaska for those services, in violation of the Ukraine-Related Sanctions Regulations. *See* Deripaska Ind. ¶¶ 1-6, 15-19, Compl. ¶ 16.  Claimants' motion does not appear to dispute that this employment, as alleged, violates IEEPA.  The grand jury also found probable cause that while employed by Deripaska, "in or about December 2019, Shriki facilitated the sale of [the Music Studio] in Burbank, California for the benefit of Deripaska, who owned and controlled the Music Studio through a series of corporate entities." Deripaska Ind. ¶ 19(a), Compl. ¶ 16(b)(i).  As further determined by the grand jury, "Shriki then attempted to expatriate the proceeds of the sale, approximately $3,078,787, from an account at Wells Fargo, held in the name of Ocean Studios LLC [i.e., the Ocean Studios Account], to a bank account in Russia belonging to a Deripaska-controlled entity." *Id.*  The Deripaska Indictment contains a forfeiture notice provision against all funds in the Ocean Studios Account as being subject to forfeiture as proceeds traceable to the

---

4 The Department of the Treasury's Office of Foreign Asset Control ("OFAC") promulgated certain Ukraine-Related Sanctions Regulations under 31 C.F.R. § 589.

IEPPA violations.  Deripaska Ind. ¶ 32(a).  This is the same account as at issue in this civil forfeiture complaint.

The Deripaska Indictment is replete with other examples of Shriki's unlawful employment for Deripaska post-2018 as part of the same conspiracy, including orchestrating hundreds of thousands of dollars of financial transactions in support of having Deripaska's child being born and housed in the United States, attempting to facilitate a similar arrangement for the birth of his second child, and purchasing various products for Deripaska's own use and as gifts for others on his behalf.  Deripaska Ind. ¶¶ 16-19, Compl. ¶ 16.

Expounding on the offense conduct described in the Indictment, the Complaint provides additional allegations establishing Deripaska's ownership and control over the Music Studio, Shriki's employment for Deripaska before and after sanctions, and Shriki's transactions to sell the Music Studio after sanctions.  It pleads that Deripaska purchased the Music Studio in 2008 through Ocean Studios California LLC, whose sole member, Ocean Studio Ltd, issued all of its initial shares in favor of Deripaska, while designating his cousin Pavel Ezubov as director.  Compl ¶ 18(b).  The Complaint demonstrates that while Shriki worked for Deripaska's Basic Element entity from 2013 and 2018, she communicated with Ezubov, who acted as a proxy for Deripaska in connection with all the described transactions.  *Id.* ¶ 18(d), (f)-(k).  The Complaint alleges that Shriki and Ezubov helped to operate and fund the Music Studio on behalf of Deripaska before and after the Designation Date, and cites specific examples from e-mails in which both Shriki and Ezubov refer to Deripaska as the ultimate decision maker.  *Id.* ¶ 18(g)-(j). *See, e.g.* February 2014 Email from Ezubov to Shriki (writing, in connection with proposal to liquidate the assets of the Music Studio, "I sent email to Oleg this morning describing the situation and asking his decision. As soon as I'll get feedback from him I'll let you know.").  At all relevant times, Ocean Studios

4

California LLC held a bank account at Wells Fargo identified as the Ocean Studios Account. *Id.* ¶ 18(c). The Complaint identifies specific entities controlled by Deripaska in filings as of January 2017, that sent $460,000 to the Ocean Studios Account used to cover the costs of operating the Music Studio pre-designation.

The Complaint further pleads that after Deripaska and Basic Element were designated on April 6, 2018, Shriki continued to work for Deripaska, including with respect to operating the Music Studio, in violation of IEEPA. Compl. ¶ 18(k). Shriki helped wind down Basic Element's offices and worked for Deripaska under the auspices of a new consulting company Shriki set up called Global Consulting Services ("GCS") with an associated bank account (the "GCS Account"). *Id.* ¶ 18(f), (n). The Complaint alleges that on or about April 27, 2018, that a Declaration of Trust was filed in the British Virgin Islands purporting to show that a new entity had taken control of shares of Ocean Studio Ltd. as nominee and trustee for Pavel Ezubov, as purported ultimate beneficial owner of the shares. *Id.* ¶ 18(c). Claimants mistakenly suggest that this Declaration evidences a legitimate pre-designation transfer of Deripaska's interests in the Music Studio to Ezubov. Def. Mem. at 11. While the veracity of this Declaration is a matter for discovery, the Declaration was dated three weeks *after* the Designation Date, when Deripaska's interests in Ocean Studio Ltd. were automatically blocked from transfer. Compl. ¶ 18(c).

By operation of law, any property owned by Deripaska in the United States on the Designation Date, including the Music Studio owned by Ocean Studios California LLC and its parent company Ocean Studio Ltd., was automatically blocked by operation of the Ukraine-Related Executive Orders. *See* Designation Notice (designating Deripaska pursuant to E.O. 13661 and 13662 and stating that "All assets subject to U.S. jurisdiction of the designated individuals and entities, and of any other entities blocked by operation of law as a result of their ownership by a

sanctioned party, are frozen, and U.S. persons are generally prohibited from dealings with them."). Any purported post-Designation Date transfer of such property by Deripaska, to Ezubov or otherwise, would be a prohibited transaction and would violate the Ukraine-Related sanctions regulations. *See* 31 C.F.R. § 589.201(a) ("All property and interests in property that are in the United States . . . of the following persons are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in"); *id.* § 589.210 ("Any transfer after the effective date that is in violation of any provision of this part or of any regulation, order, directive, ruling, instruction, or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 589.201, is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or interest in property.").

The Complaint explains how, post-designation, Deripaska's entities continued to unlawfully fund the operation of the Music Studio through Shriki's GCS Account. It pleads that Shriki's GCS Account received over $500,000 in transfers after Deripaska was designated, between August 2018 and September 2019, from "from two entities associated with Deripaska, one of which entered into a separate agreement with Graham Bonham-Carter," a separately indicted co-conspirator,[5] "to manage other Deripaska properties abroad after the Designation Date, and a second entity that was recognized for making charitable contributions on behalf of Deripaska after the Designation Date, with Deripaska's knowledge." Compl. ¶ 18(n). In turn, in July and October 2019, Shriki sent a total of $69,000 to the Music Studio's Ocean Studios Account from her GCS Account funded by these Deripaska entities. *Id.* ¶ 18(q). Put another way, the Complaint

---

5 The Complaint incorporates and appends the Indictment charging Graham Bonham-Carter with his involvement in an IEEPA conspiracy with Deripaska as Exhibit B.

illustrates how Deripaska's entities' money was unlawfully transferred through Shriki to the Ocean Studios Account just months before Shriki sold the Music Studio and placed the *in rem* proceeds in the same Ocean Studios Account. As further evidence that Shriki's GCS Account was used in transactions benefitting Deripaska in furtherance of the charged sanctions conspiracy, the Complaint recites thousands of dollars other payments from the same account to reimburse Shriki for a host of other expenses associated with housing, childcare, and other expenses for Deripaska's child. *Id.* ¶ 18(r).

The Complaint further pleads that during the same period when Shriki was unlawfully employed by Deripaska, she "assisted with the sale of the Music Studio by Ocean Studios California LLC in various ways, such as preparing the property for sale, coordinating with the accounting firm for the Music Studio, communicating with the real estate broker to approve the sale, facilitating the payment of outstanding taxes and bills for the Music Studio, signing over the property deed, and liquidating the other assets in the Music Studio." Compl. ¶ 18(s).

Finally, the Complaint recites in detail Shriki's efforts, within the scope of her unlawful employment by Deripaska, to transfer the proceeds of the sale of the Music Studio from the Ocean Studios Account to a bank account in Russia under the name Sparticle. Compl. ¶ 18(z)-(dd). Although it is not necessary to show that Deripaska had any interest in Sparticle to establish a nexus between the *in rem* proceeds and the alleged IEEPA violation, the Complaint plausibly alleges facts supporting Deripaska's post-designation control over Sparticle as well. The Complaint pleads that: (1) according to corporate records, Deripaska owned Sparticle as of January 2017,[6] (2) Sparticle directly funded the Music Studio in 2018 and 2019 after Deripaska's

---

6 The Complaint acknowledges the existence of a purported Cypriot certificate identifying Ezubov as the sole shareholder of Sparticle, but that certificate was dated May 8, 2019—more than a year after the Designation Date. Compl. ¶18(p).

designation, and (3) when Sparticle ceased payments in 2019, it was replaced as a funding source

by other Deripaska-controlled entities which used Shriki's GCS Account as an intermediary. *Id.*

¶ 18(e), (p), (q), (aa). Deripaska's historic control over Sparticle and its coordinated replacement

by other Deripaska-controlled entities establish the strong inference that the Music Studio and its

funding entities, including Sparticle, remained under common control of Deripaska post

designation. The Complaint further pleads that even after receiving formation documents and other

information from Shriki in support of making the transfer to Sparticle, Wells Fargo determined

that the Ocean Studios Account and the underlying *in rem* proceeds (the "Sale Proceeds") should

be blocked due to its relationship with Deripaska. Compl. ¶ 18(bb)-(dd).

## II.    ARGUMENT

### A. Standard of Review

This is a civil forfeiture case, under which the Government will bear the standard civil

burden to prove its claims by a preponderance of the evidence. 18 U.S.C. § 983(c)(1). In a civil

forfeiture action, the complaint must meet the pleading standards set forth in Rule G of the

Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. Rule G(2)

requires, among other things, that the complaint "state sufficiently detailed facts to support a

reasonable belief that the government will be able to meet its burden of proof at trial." Rule

G(2)(f); *see In re 650 Fifth Ave. & Related Properties*, 777 F. Supp. 2d 529, 541-42 (S.D.N.Y.

2011). While a higher standard than notice pleading, Supplemental Rule G(2) nonetheless poses

a "low bar" to overcome in response to a motion to dismiss. *See United States v. Aguilar*, 782

F.3d 1101, 1108–09 (9th Cir. 2015) (noting that Supplemental Rule G(2) as derived from

Supplemental Rule E(2)(a), "does not articulate an onerous standard," but presents a "low bar");

*United States v. $601,426.19 of Funds Associated With Dynapex Energy Ltd.*, 24 Civ. 542 (JMC),

2024 WL 4854310, at *6 (D.D.C. Nov. 21, 2024) (same).

Furthermore, the Complaint does not need to allege facts sufficient to prove the forfeitability of the defendant property, nor is the Government required to have sufficient evidence to establish the forfeitability of property at the time the complaint is filed. The Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 106 Pub. L. No. 185, 114 Stat. 202 (2000), codified in part at 18 U.S.C. § 983, expressly provides that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D); *see also* 18 U.S.C. § 983(c)(2) ("[T]he Government may use evidence gathered after the filing of a complaint for forfeiture to establish, by a preponderance of the evidence, that property is subject to forfeiture."); Rule G(8)(b)(ii). Like other civil complaints, the facts in a civil forfeiture complaint are assumed true on a motion to dismiss and all reasonable inferences are drawn in the Government's favor. *United States v. Any & All Funds on Deposit in Acct. No. 0139874788,* 2015 WL 247391, *5 (S.D.N.Y. 2015).

To meet this burden, "[i]t is sufficient for the United States to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *United States v. $22,173.00*, 716 F. Supp. 2d 245, 248 (S.D.N.Y. 2010); *accord United States v. $506,069.09 Seized from First Merit Bank*, 664 F. App'x 422, 434 (6th Cir. 2016). "The Government is not required to allege in the complaint all of the facts and evidence at its disposal." *Id*. In determining whether the allegations in a civil forfeiture complaint are sufficient to survive a motion to dismiss, the complaint need not even allege every fact necessary for the government to prevail at trial. *See United States v. $5,988,031.33*, 12 Civ. 2289 (JTF), 2014 WL 1338889, *3 (W.D. Tenn. Mar. 28, 2014) (explaining that Section

9

983(a)(3)(D) makes clear that the court must review the facts in a "relaxed manner"); *see also United States v. All Funds on Deposit Held in the Name of Jaeggi*, 05 Civ. 3971 (SJF) 2007 WL 2114670, at *4 (E.D.N.Y. July 16, 2007) ("the Government's forfeiture claim can advance forward in face of a motion to dismiss even if the Government's complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding").

### B.  The Complaint Sufficiently Alleges that the Sale Proceeds are Forfeitable as Proceeds of IEEPA Violations

The Complaint pleads two claims for forfeiture. It alleges that the Sale Proceeds are forfeitable as proceeds of sanctions violations under IEEPA (Count One), and as the proceeds of a conspiracy to violate IEEPA sanctions (Count Two) pursuant to 18 U.S.C. § 981(a)(1)(C).  That provision states that property subject to civil forfeiture includes "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity . . .'"  *Id.*  IEEPA violations constitute specified unlawful activity. *United States v. All Funds on Deposit in United Bank of Switzerland,* 188 F. Supp. 2d 407 (S.D.N.Y. 2002).

There is no question that the Sale Proceeds were derived from Olga Shriki's sale of the Music Studio and its contents.  Nor is it disputed that Shriki's employment by Deripaska post-Designation, as alleged, is an IEEPA violation, because Shriki was a U.S. person who was providing services for Deripaska in the U.S.  The only remaining question, therefore is whether, the Complaint sufficiently pleads that Shriki's upkeep and sale of the Music Studio was amongst the prohibited services Shriki provided for Deripaska's benefit.  As discussed at length above, this standard is easily met here, where the Complaint plausibly establishes that (1) Deripaska bought and indisputably owned the Music Studio pre-Designation Date, (2) Shriki and Ezubov both

acknowledged Deripaska as the decisionmaker with respect to the Music Studio in emails before the Designation Date, (3) the purported transfer of the entity that owned the Music Studio to Ezubov occurred after the Designation Date, and would therefore have been null, (4) Shriki continued unlawfully working for Deripaska without a license after he was designated, (5) during the course of that unlawful employment, Shriki funded the upkeep of the Music Studio through transfers from other Deripaska-associated entities, and (6) Shriki sold the Music Studio and its contents while working for Deripaska, creating the *in rem* proceeds subject to forfeiture.

## C. <u>The Claimants' Arguments Lack Merit</u>

The Claimants in this case are Pavel Ezubov—Deripaska's unsanctioned cousin[7]— and Sparticle Ltd., the entity to which Shriki was instructed to send the *in rem* proceeds. Ezubov alleges that he—not Deripaska—was the "Ultimate Beneficial Owner of all Studio Ltd.'s shares on or before April 27, 2018", the date of the aforementioned Declaration of Trust. Def. Mem. 2-3. If the transfer happened on April 27, 2018, however, it would have taken place 21 days after the April 6, 2018 Designation Date that blocked Deripaska's properties, and would amount to a separate IEEPA violation subject to forfeiture. 31 C.F.R. 589.201(a) ("All property and interests in property that are in the United States, that come within the United States, or that are or come within the possession or control of any U.S. person of [an SDN] are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in."). Significantly, Ezubov's motion alleges nothing about how he purportedly came to acquire Ocean Studio Ltd.'s shares from Deripaska and how much he paid (if anything) for those shares. Ezubov does not grapple with the allegations that he had a history of serving as a proxy for Deripaska (Compl. ¶ 18(d), (g)), and

---

7 As noted in the Complaint, Ezubov has not been designated as an SDN in the United States, but has been sanctioned by multiple foreign jurisdictions, including the United Kingdom and Canada. The Complaint further avers that Ezubov has acted as a proxy for Deripaska in connection with the transactions described herein. Compl. ¶ 18(d).

tellingly does not assert that he ceased having communications and receiving instructions from Deripaska and associates of Deripaska about the operations and sale of the Music Studio after the Designation Date. Ezubov may try to make his ownership case later on, but the facts as alleged easily make out probable cause that Shriki's sale of the Music Studio violated IEEPA and that Ezubov is just a straw owner put forward to disguise Deripaska's continued interest and benefit in the studio. *Cf. United States v. M/Y Amadea*, 770 F. Supp. 3d 558, 624–25 (S.D.N.Y. 2025) (striking claims by "mere straw owners who lack standing to contest the forfeiture the [yacht] Amadea").

Claimants acknowledge, in any case, that regardless of the Music Studio's formal ownership status, an IEEPA violation would be made out if Shriki's post-designation work for the Music Studio was a benefit or service to Deripaska, or involved the receipt of any funds from Deripaska. *See* Def. Mem. 9 (citing C.F.R. § 589.201(1) and (2)). The Complaint meets both of these independent grounds. It pleads that Shriki "continued to work for the benefit of Deripaska, including with respect to operations of the Music Studio" after the Designation Date." Compl. ¶ 18(k). And it substantiates that allegation by, among other things, reciting specific transfers of funding from Deripaska-controlled entities to Shriki's GCS Account that she subsequently routed to maintain the Music Studio during the Summer and Fall of 2019, indicating both a provision of funds from Deripaska, and a provision of services for his benefit. Compl. ¶ 18(n), (q), (v). These Deripaska-controlled entities also made charitable contributions on behalf of Deripaska and entered into agreements to manage Deripaska's properties, further evidencing that they operated for Deripaska's benefit. *Id.* ¶ 18(n). The fund transfers from these Deripaska entities to Shriki occurred at approximately the same time as Shriki was selling the Music Studio contents and putting up the Music Studio itself for sale, further bolstering the nexus between the IEEPA

violation and the proceeds from the sales. *Id.* ¶ 18(n), (q), (v).     Indeed, because unlawful maintenance payments from Deripaska-associated entities to Shriki were used to upkeep the Music Studio, the Music Studio itself would be subject to forfeiture even independent of its sale. *United States v. Park*, 825 F. Supp. 2d 644, 648 (D. Md. 2011) ("In the case of a business that would not have been solvent but for the infusion of illegally-obtained funds, the entire business may be subject to forfeiture as the proceeds of the offense.").

Against this backdrop, Claimants remarkably argue that the Complaint alleges no IEEPA violation at all relating to Shriki's Music Studio operations.   Def. Mem. 8.  Aside from Ezubov's disputed claim of ownership, discussed above, Claimants offer the speculative interpretation that Shriki's GCS Account could have been used for *both*, unrelated illegal services to benefit Deripaska, and separate services for Ezubov regarding the Music Studio having nothing to do with Deripaska. Def. Mem. 14.  But that interpretation is not actually plausible in light of Shriki's uninterrupted history of employment for Deripaska while helping to operate the Music Studio, including in 2019, when Shriki's GCS Account received funding from Deripaska-controlled entities to upkeep the Music Studio.  Compl. ¶ 18(n), (q).  And during the Music Studio sale process, when confronted with a reimbursement claim by a musician who reminded her that Oleg Deripaska (using the coded reference "our friend (O)") covered such expenses previously, Shriki responded by asking for details on the property to be reimbursed. *Id.* ¶ 18(u).  Rather than deny any continued obligation by Deripaska to the Music Studio, Shriki's actual response was consistent with her continued employment by Deripaska, and Deripaska's continued interest in and benefit from the Music Studio.  Claimants' self-serving suggestion that Shriki may have been employed by Ezubov alone in connection with the Music Studio is no more than a speculative

inference on a motion to dismiss, where all reasonable inferences must be drawn in the plaintiff's favor.[8]

Claimants also contend that the Complaint "impermissibly asks the Court to draw several layers of inferences to conclude that Ms. Shriki's assistance to Mr. Deripaska in other ways, for which Ms. Shriki is under separate criminal indictment, means that *all* of Ms. Shriki's financial transactions—and all transactions and business related to GCS—can be attributed to Mr. Deripaska's benefit or instruction." Def. Mem. 15. But as noted above, the Deripaska Indictment explicitly alleges that "in or about December 2019, Shriki facilitated the sale of a [Music Studio] in Burbank, California for the benefit of Deripaska, who owned and controlled the Music Studio through a series of corporate entities." Deripaska Ind. ¶ 19(a). These allegations established probable cause that Deripaska and Shriki violated sanctions through, *inter alia* the sale of the Music Studio. *See Kaley v. United States*, 571 U.S. 320, 328 (2014) ("[a]n indictment fair upon its face, and returned by a properly constituted grand jury ... conclusively determines the existence of probable cause to believe the defendant perpetrated the offense alleged."); *Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts.*, 2019 WL 8892585, at *5 (C.D. Cal. Dec. 20, 2019) ("[T]he Court notes that the Grand Jury . . . has issued a superseding indictment that includes criminal forfeiture allegations closely corresponding to the civil forfeiture allegations in this case. . . . The charges in the superseding indictment are a strong indication that probable cause supports the seizures at issue here[.]"). In any case, in evaluating sufficiency, "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible" *Braden v. Wal–Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009). Here,

___

8 To the extent Claimants suggest that Shriki was solely employed by Ezubov, and not Deripaska, in connection with Music Studio, that is a factual assertion that should properly be addressed at trial or an evidentiary hearing, following discovery.

14

the fact that Deripaska used Shriki to engage in a host of sanctions-violative conduct, including trusting her with transactions related to the birth of his own child, bolsters the allegation that Shriki's sale of the Music Studio was part and parcel of her unlawful employment by Deripaska, particularly given that she used the same GCS company and GCS bank account involved in her other work for Deripaska.  At the pleading stage, the Complaint plainly "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Rule G(2)(f).

## **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Claimants' motion to dismiss.

Dated: New York, New York
       July 8, 2025

                                         JAY CLAYTON
                                         United States Attorney for the
                                         Southern District of New York
                                         Attorney for the Plaintiff
                                         United States of America

                          By:    _____
                                         VLADISLAV VAINBERG
                                         Assistant United States Attorney
                                         26 Federal Plaza, 38th Floor
                                         New York, New York 10278
                                         Telephone: (212) 637-1029

15