**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------X

UNITED STATES OF AMERICA, :

Plaintiff, Civil Action No. 24-CV-9189

-against-

$3,435,676.57 IN UNITED STATES CURRENCY HELD IN GENERAL LEDGER ACCOUNT NO. 4050720 AT WELLS FARGO BANK, N.A., FORMERLY ON DEPOSIT IN ACCOUNT NO. 2502560838 ASSOCIATED WITH OCEAN STUDIOS CALIFORNIA LLC, AND ANY AND ALL FUNDS TRACEABLE THERETO, INCLUDING ACCRUED INTEREST,

Defendants *In Rem*

--------------------------------X

**CLAIMANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Claimants Pavel Ezubov ("Mr. Ezubov") and Sparticle Ltd. ("Sparticle") (together, "Claimants") submit this Reply in support of their Motion to Dismiss ("Mot.," ECF Nos. 13, 15, hereinafter "the Motion" or "Claimants' Motion"), and in response to the Opposition filed by the United States as Plaintiff in this civil forfeiture action ("Opp.," ECF No. 27).

**INTRODUCTION**

The Complaint and Opposition to Claimants' Motion to Dismiss in this action make clear the Government's intent to litigate criminal allegations in a civil forfeiture context. To do so, the Government imported a still-pending criminal indictment to the civil forfeiture complaint at issue in this case, ("Compl.," ECF No. 1 and 1-1), and now argues that the mental shortcuts that characterize that indictment are sufficient to support forfeiture of more than $3 million that rightfully belongs to third parties that have not been charged with a crime.

Contrary to the Complaint, the nearly $3.5 million in funds ("Defendants-*in-rem*" or "Defendant assets") are not the proceeds of an illicit transaction in violation of Executive Orders and the implementing regulations. (Compl. ¶ 20). The Music Studio was not "blocked" property, so its sale did not violate the International Emergency Economic Powers Act ("IEEPA"), contrary to the conclusory allegations in the Complaint. (Compl. ¶ 20).

But even if one assumes the allegations to be true (as one must for purposes of Claimants' Motion), those allegations, for the reasons discussed in the Motion, do not support the conclusion that the Music Studio was blocked property such that the proceeds of its sale are forfeitable.

The Government's Opposition offers nothing to support a contrary conclusion. Instead, it invokes a pleading standard – probable cause – that has no basis in either Supplemental Rule G(2) ("Rule G(2)") or the applicable caselaw, and asks the court to therefore automatically accept the sufficiency of the allegations in the indictment accompanying the Complaint, and to accept the conclusory allegations in the Complaint itself, as meeting that standard without any demand for the "detailed facts" required by Rule G(2). Further, it misstates the key element required to plead and prove an IEEPA violation: that ***ownership*** by a sanctioned individual, not control, determines whether property is blocked such that a transaction involving that property constitutes an IEEPA violation. For these reasons, and those set forth in Claimants' Motion, the Opposition cannot be credited, and the Complaint should be dismissed.

## I. The Applicable Pleading Standard Is "Sufficiently Detailed Facts," Not "Probable Cause"

The Government's Opposition repeatedly invokes an incorrect pleading standard for evaluating the Complaint's sufficiency. No fewer than seven times, the Opposition asserts that the allegations of the Complaint and/or the grand jury indictment establish "probable cause" such that

civil forfeiture is appropriate as to the Defendants-*in-rem*. (*See* Opp. at 1, 3, 12, and 14). "Probable cause," however, is not the applicable pleading standard here.

It is beyond dispute that a complaint for civil forfeiture must comply with both Rule G(2) and Rule 8 of the Federal Rules of Civil Procedure. Under Rule G(2), a civil forfeiture complaint cannot survive where it fails to state "sufficiently detailed ***facts***" to support a reasonable belief that the government ***will*** be able to meet its burden at trial." *United States v. $32,507.00 in U.S. Currency*, No. 14 Civ. 5118, 2014 WL 4626005, at *1 (S.D.N.Y. Sept. 16, 2014) (emphasis added). And under Rule 8, mere "labels and conclusions," "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement of relief," particularly where the allegations suggest an "obvious alternative explanation" for the alleged conduct. *Id*. at 678, 682.

Allegations in an indictment, particularly one that has not yet been tested on the merits by a motion to dismiss under Federal Rule of Criminal Procedure 12,[1] do not, as the Government argues, automatically meet Rule G(2)'s pleading standard. Indictments need not be pleaded with the same level of specificity as civil complaints subject to the Rule 8 pleading standard, let alone the higher standard imposed on civil forfeiture complaints by Rule G(2). *See, e.g., United States v. Ramos*, No. 1:23-CR-554 (MKV), 2024 WL 4979204, at *2 (S.D.N.Y. Dec. 4, 2024) (noting higher burden criminal defendants must overcome in seeking dismissal of indictment for failure to

---

[1] Although one of the defendants in *United States v. Deripaska*, Natalia Bardakova, filed a motion to dismiss the indictment, the court denied that motion based solely on the fugitive disentitlement doctrine given her current status as a fugitive, and did not reach the question whether the indictment failed to state an offense or lacked sufficient specificity under Fed. R. Crim. P. 12(b)(3)(B). *See* Case No. 22-cr-518 (S.D.N.Y.) at ECF No. 48.

state an offense versus dismissal of civil complaint); *see also United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) ("'[A]n indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime.'") (quoting *United States v. Stavroulakis*, 952 F.2d 686, 693 (2d Cir. 1992)).

Unquestionably, the bare assertion repeated *ad nauseum* in the Complaint that the Music Studio was sold "for Deripaska's benefit" is a legal conclusion, not a factual finding. That the legal conclusion is couched within a grand jury indictment does not transform the conclusion into a fact that the Court must "assume[] true" on a motion to dismiss. *See United States v. Any and All Funds on Deposit in Acct. No. 0139874788*, No. 13 Civ. 7983 (KPF), 2015 WL 247391, *5 (S.D.N.Y. Jan. 20, 2015). Similarly, where the Complaint specifically references the sale of the Music Studio, it merely recites the elements of an IEEPA violation—*i.e.*, that Shriki "continued to work for the benefit of Deripaska, including with respect to the operations of the Music Studio" after Deripaska's designation," (Opp. at 12 (citing Compl. ¶ 18(k)))—without pleading facts in support of the alleged legal conclusions. Conclusory allegations such as these, without any supporting facts, cannot survive a motion to dismiss under Rule G(2) and Rule 8.

The two cases cited by the Government emphasizing that facts within a grand jury indictment demonstrate "probable cause" for seizing assets are inapplicable to the civil forfeiture context. In *Kaley*, the Supreme Court addressed a ***criminal*** defendant's right to challenge a ***pre-trial*** protective order that prevented them from transferring assets described in the forfeiture count of the indictment, for which the Government need only meet a probable cause standard. 571 U.S. 320, 328 (2014). And in *Matter of Seizure of: Any & all funds held in Republic Bank of Arizona Accts*, the court applied the pleading standard under 19 U.S.C. § 1615, which is unique to forfeitures of vessels, vehicles, aircraft, merchandise and baggage seized based on violations of

laws "relating to the collection of duties on import," a standard wholly inapplicable to the instant action. 2019 WL 8892585, at *5 (C.D. Cal. Dec. 20, 2019). Indeed, the court in *Republic of Arizona* explicitly declined to apply the *Kaley* "probable cause" standard in the context of a civil forfeiture. 2019 WL 8892585, at *5. Neither this case nor *Kaley* demonstrates, as the Government contends, that it is permissible for this Court to "draw several layers of inferences to conclude that Ms. Shriki's assistance to Mr. Deripaska in other ways, for which Ms. Shriki is under separate criminal indictment, means that *all* of Ms. Shriki's financial transactions . . . can be attributed to Mr. Deripaska's benefit or instruction." (Opp. at 14 (citing Mot. at 15)).

The proper standard by which to evaluate the sufficiency of the Complaint is properly described and applied in Claimants' Motion: it requires a statement of "sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." *United States v. $32,507.00 in U.S. Currency*, No. 14 Civ. 5118, 2014 WL 4626005, at *1 (S.D.N.Y. Sept. 16, 2014). The Complaint's allegations fall far short of meeting this standard.

## II. The Government Misstates the Elements of an IEEPA-Related Civil Forfeiture Claim.

Perhaps more important than the Government's unwarranted insistence on a more lenient pleading standard, the Government's Opposition also misconstrues one of the key elements of an IEEPA violation: that it must plead (and prove) that the property sold in a transaction giving rise to an IEEPA violation must be ***owned*** (through a 50% or greater share), and not merely controlled, by an SDN. The Government's repeated focus on Mr. Deripaska's "control" of the implicated entities, and the absence of (and inability to aver) any allegation that Mr. Deripaska ***owned*** any of those entities, ignore this critical requirement.

The Opposition fails to address or correct—and indeed, repeats—the Complaint's erroneous implication that transactions involving SDN-***controlled*** entities constitute IEEPA

violations. As stated in Claimants' Motion, a civil forfeiture claim under § 981(a)(1)(C) must allege that the defendant assets are traceable to a violation of IEEPA, which prohibits, in relevant part, the "provision" of any "funds" or "goods" by, to, or for the benefit of Mr. Deripaska or any person or entity in which he ***owns***, directly or indirectly, a 50 percent or greater interest (hereinafter collectively the "Deripaska-Owned Entities"), or (2) the receipt of (or conspiracy to receive) any contribution or provision of any funds from Mr. Deripaska or Mr. Deripaska-Owned Entities. (*See* Mot. at 9–10 (citing 50 U.S.C. § 1705(a) and 31 C.F.R. § 589.201).) Here, that means that the Defendants-*in-rem* subject to civil forfeiture must be traceable to a transaction involving either Mr. Deripaska or an entity in which Mr. Deripaska *owns* a 50 percent or greater interest. This requirement, however, seems to be lost on the Government.

As argued in Claimants' Motion, by the plain terms of the IEEPA and its promulgated regulations, and as recognized by the Department of Treasury's Office of Foreign Assets Control, the Government agency charged with enforcement of the IEEPA, SDN ***ownership***, not control, determines whether property is blocked such that a transaction involving that property constitutes an IEEPA violation. (Mot. at 10 n.2 (citing 31 C.F.R. § 589.411 and OFAC published guidance in Frequently Asked Question (FAQ) 389, https://ofac.treasury.gov/faqs/398 (last visited July 18, 2025)). Indeed, the Government in its Opposition all but concedes this point in citing to the "ownership" language in both § 589.201(a) and Mr. Deripaska's Designation Notice. (*See* Opp. at 6 (quoting language from § 589.201(a)); *see also* Designation Notice ("All assets subject to U.S. jurisdiction of the designated individuals and entities, and of any other entities blocked by operation of law as a result of their ownership by a sanctioned party, are frozen, and U.S. persons are generally prohibited from dealings with them.") (quoted in Opp. at 6)). However, it spills the rest of its remaining ink highlighting allegations in the Complaint describing Mr. Deripaska's

***control*** of several entities, including Ocean Studios California LLC ("OS California") and the Music Studio itself. Indeed, the Complaint and the accompanying indictment repeatedly allege that the Music Studio and the entities that owned it were "controlled" by Mr. Deripaska at the time of the Music Studio sale. (*See, e.g.*, Compl. ¶¶ 16(i), 18(e); *see also* ECF No. 1-1 ("Indictment") ¶ 19(a)).[2] But never once does the Complaint allege that Mr. Deripaska, at the time of the Music Studio sale, owned more than 50% of (1) the Music Studio, OS California or Ocean Studio Ltd. ("Studio Ltd."), (2) any other entity through which it alleges he controlled the Music Studio, OS California or Studio Ltd., or (3) the entity (*i.e.*, Sparticle) alleged to have been the intended recipient of the proceeds at issue in the Complaint.

The Opposition further highlights legally irrelevant and merely atmospheric allegations relating to the post-Designation provision of funds to Olga Shriki by "entities ***associated*** with Deripaska," (Compl. ¶ 18(n) and (emphasis added)), and funds provided to OC California by Sparticle, of which Mr. Deripaska was allegedly "the ***controlling*** party" in 2017, before he became subject to sanctions in 2018. (Compl. ¶ 18(p) (emphasis added)). But these allegations are irrelevant to establishing a basis for civil forfeiture and are only intended to obfuscate: the Complaint does not connect either directly or even inferentially the payment that Ms. Shriki allegedly received in 2019 for "work done for Ocean Studios California LLC," (Compl. ¶ 18(v)), to Mr. Deripaska, much the (unnamed) entities allegedly owned or controlled by Mr. Deripaska that provided Ms. Shriki with the payments. Even assuming their truth, these allegations do not amount to an IEEPA violation. That entities "associated with" Mr. Deripaska or which Mr.

---

[2] Although there is a single, conclusory allegation in the Complaint suggesting Mr. Deripaska's "ownership" of the entities allegedly tied to the Music Studio sale, *see* Compl. ¶ 16(i) (alleging that Mr. Deripaska "*owned* and controlled the Music Studio through a series of corporate entities"), even that allegation is ambiguous as to when Mr. Deripaska owned those entities relative to the Music Studio sale, and in any event does not allege that any such ownership was more than 50% as to each such entity.

Deripaska "controlled" prior to his Designation (or even after it) conducted business in the United States is not an IEEPA violation.[3] Without alleging that the entities described were at least 50% percent-owned by Mr. Deripaska after his Designation, the Complaint does not state an IEEPA violation, much less one that is sufficiently traceable to the Defendants-*in-rem*.

Rather than challenging this requirement of "ownership" with any legal authority suggesting that mere "control" is sufficient, the Opposition doubles down on its "control" narrative, arguing that IEEPA violations occurred when entities allegedly "controlled" by Mr. Deripaska, or in some instances merely "associated" with him, indirectly provided funds to the Music Studio's operation after Mr. Deripaska's Designation. (Opp. at 12–13 ("Indeed, because unlawful maintenance payments from Deripaska-associated entities . . . were used to upkeep the Music Studio, the Music Studio itself would be subject to forfeiture even independent of its sale.")). To support this narrative, the Government boldly cites *United States v. Park*, 825 F. Supp. 2d 644, 648 (D. Md. 2011). But the question before the court in *Park* involved the pre-trial restraint of assets possibly subject to <u>***criminal***</u> forfeiture for which the Government need only establish probable cause and not the stricter standard under Rule G(2), and involved allegations of bank fraud, a crime in which the distinction between control and ownership that is so critical here is irrelevant. *Id*. at 646 (emphasis added). Unsurprisingly, the Government cites no authority for the proposition that a sanctioned individual's mere control of or even association with an entity is

---

[3] In one of its several contortions of its own allegations, the Government mischaracterizes Paragraph 18(g) of the Complaint as alleging that a bank account "funded by [] Deripaska entities" transferred $69,000 to the entity owner of the Music Studio in October 2019. (Opp. at 6). Paragraph 18(g)'s allegations do not stretch nearly that far. Rather, it alleges only that unnamed "accounts ***tied to*** Deripaska" provided the funds at issue. The Complaint does not anywhere describe the alleged "tie" between the accounts and Deripaska, much less that Deripaska owned the accounts such that payments therefrom were funded by "Deripaska entities." (Opp. at 6–7).

sufficient to make transactions with that entity an IEEPA violation. That is because no such authority exists.[4]

Finally, the Opposition's characterization of Ms. Shriki's alleged work for Mr. Deripaska facilitating the Music Studio sale as the "service" for Mr. Deripaska's benefit that forms the basis of the relevant IEEPA violation under § 589.201(b)(1) (as opposed to the Music Studio sale proceeds being the "funds" establishing the violation under either § 589.201(b)(1) or (2)) cannot rescue the Complaint's deficient allegations. There is no allegation in the Complaint establishing that Ms. Shriki was employed ***exclusively*** by Mr. Deripaska after the Designation Date. Although the Complaint alleges that she and Mr. Ezubov managed the Music Studio owned by OS California for Mr. Deripaska before the date of his Designation (Compl. ¶¶ 18(g)–(j)), it also alleges that Mr. Deripaska's ownership interest in Studio Ltd., OS California's parent company, was transferred to Hospina Limited ("Hospina"), which held that interest nominally for Mr. Ezubov as its Ultimate Beneficial Owner. (Compl. ¶ 18(c)). Once Mr Ezubov became Studio Ltd.'s (and by extension OS California's and the Music Studio's) owner, it is entirely plausible—indeed more plausible than the inference the Government asks the court to draw—that Ms. Shriki continued to manage OS California and the Music Studio ***for the benefit of Mr. Ezubov as owner***, and not for the benefit of Mr. Deripaska, who relinquished his ownership interest in these entities years prior. This is a patently more plausible inference because there is no allegation that Mr. Deripaska continued to own more than 50% of either OS California or Studio Ltd. at the time of the transaction. And if it is more plausible that Mr. Ezubov was the owner of OS California and Studio Ltd. at the time of

[4] Even if "control" were the correct standard under the IEEPA, the only specific facts and evidence—beyond conclusory allegations—that the Complaint references to establish Mr. Deripaska's "control" over OS California and other relevant entities are emails and events prior to his designation in April 2018. *See, e.g.*, Compl. ¶¶ 18(a) (January 2008), (b) (June 2007), (g) (February 2014), (h) (February 2014), (i) (September 2014), (j) (March 2016), (l) ("second half of 2015," 2016), (m) (February 2018), (p) (January 2017).

the Music Studio sale (which, in the absence of any allegation establishing Mr. Deripaska's ownership of those entities, must be the case), then it is necessarily more plausible that Ms. Shriki's services in facilitating the Music Studio sale were for Mr. Ezubov's benefit, and not Mr. Deripaska's. *Accord Iqbal*, 556 U.S. at 682 (2009) (facts that may, if taken as true, support an argument do not "plausibly establish" that argument where an "obvious alternative explanation" exists). This more plausible inference is bolstered even further by the fact that the Complaint is devoid of any allegation that would establish that Sparticle, the intended recipient of the proceeds from the Music Studio sale, was owned by Mr. Deripaska. Any inference that Ms. Shriki facilitated the Music Studio sale for Mr. Deripaska's benefit (as opposed to Mr. Ezubov's) requires precisely the type of speculation that the demanding pleading standard imposed by Supplemental Rule G(2)(F) was intended to foreclose. *See* Suppl. R. G, advisory comm.'s note (citing *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002)). Because the Complaint fails to allege that any of the entities involved in the sale of the Music Studio and the transfer of its proceeds from OS California to Sparticle were owned by Mr. Deripaska, Count 1 of the Complaint should be dismissed.

Finally, because the Complaint fails to allege a substantive IEEPA violation, it cannot and does not establish that the Defendants-*in-rem* are traceable to the alleged IEEPA conspiracy either, as the absence of an actionable substantive violation that caused the transaction severs any link of traceability between the broader alleged conspiracy and the Defendants-*in-rem*. *See In re 650 Fifth Ave. & Related Props.*, 777 F. Supp. 2d 529, 552 (S.D.N.Y. 2011) (holding that "proceeds" traceable to a violation "means the amount of money acquired ***through the illegal transactions*** resulting in the forfeiture, less the direct costs incurred in providing the goods or services") (emphasis added).

The only conceivable alleged conspiratorial act even remotely connected to the transaction—the alleged transfer of Studio Ltd. shares from Mr. Deripaska to Hospina on April 27, 2018, *see* Compl. ¶ 18(b), (c)—should not be given any consideration because it is a gross misrepresentation of the document on which those allegations rely. The Declaration Trust (attached hereto at Exhibit 1) does not state or even suggest that the Studio Ltd. share transfer occurred on April 27, 2018. It is merely an acknowledgement by Hospina that as of April 27, 2018, it "h[e]ld the shares shown in the Schedule hereto [*i.e*., the Studio Ltd. shares] registered in [its] name as Nominee and Trustee for … Mr. Pavel Ezubov (hereinafter called "***the Owner***")," and that it "undert[ook] and agree[d] not to transfer, deal with or dispose of the said shares or any of them save as ***the Owner*** may from time to time direct." Ex. 1.[5] There is no reference anywhere in the Declaration to the date on which Hospina received the shares, and in fact the British Virgin Island's corporate registry demonstrates that Hospina became owner of the Studio Ltd. shares on June 27, 2017, ***almost a year prior to Mr. Deripaska's designation***. *See* Ex. 2.[6] Indeed, this Declaration not only offers no support for the allegation that, according to the Government, establishes that the transfer of the Studio Ltd. shares to Hospina occurred pre-Designation; it also confirms that ***Mr. Ezubov***, and not Mr. Deripaska or any entity that Mr. Deripaska owned (or even controlled), was "the Owner" of Studio Ltd. (and thus of OS California and the Defendants-*in-*

---

[5] The court is permitted to rely upon documents referenced in the complaint when assessing a motion to dismiss under Rule 12(b)(6), without converting it into one for summary judgment under Rule 12(d). *See, e.g*., *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002) "[e]ven where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint.").

[6] The court is permitted to rely upon matters of public record relevant to the allegations when in assessing a motion to dismiss under Rule 12(b)(6), without converting the motion into one for summary judgment under Rule 12(d). *See, e.g*., *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) (when ruling on Rule 12(b)(6) motions, courts may properly consider matters subject to judicial notice) (citing 5B Wright & Miller § 1357 (3d Ed. 2004 and Supp. 2007)); *Bentley v. Dennison,* 852 F. Supp. 2d 379, 382 n.5 (S.D.N.Y. 2012) ("Judicial notice of public records is appropriate—and does not convert a motion to dismiss into a motion for summary judgment—because the facts noticed are not subject to reasonable dispute and are capable of being verified by sources whose accuracy cannot be reasonably questioned.").

*rem*) as of April 27, 2018 and thereafter, and that Mr. Ezubov had the power to "from time to time direct" what do with those shares.

Because the Complaint cannot establish that the Defendants-*in-rem* are traceable to any alleged substantive IEEPA violation, and cannot establish a sufficiently close connection between the Defendants-*in-rem* and any other act alleged to be part of the conspiracy, it cannot establish that the Defendants-*in-rem* is traceable to the alleged conspiracy. *See In re 650 Fifth Ave. & Related Props*., 777 F. Supp. at 552. Count 2 must therefore also be dismissed.

## CONCLUSION

For the reasons set forth above and in Claimants' Motion, Claimants respectfully request that this Court grant their Motion and dismiss the Complaint.

Dated: July 18, 2025

Respectfully submitted,

/s/ *Patrick F. Linehan*

Patrick F. Linehan
STEPTOE LLP
1330 Connecticut Avenue NW
Washington, D.C. 20036
(202) 429-8154
PLinehan@steptoe.com

*Attorneys for Claimants*

## CERTIFICATE OF SERVICE

I, Patrick F. Linehan, an attorney, hereby certify that on July 18, 2025, I caused a true and correct copy of the foregoing Motion to Dismiss to be served via the Court's ECF system upon all counsel of record.

*/s/ Patrick F. Linehan*
Patrick F. Linehan

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(c)**

I, Patrick F. Linehan, an attorney, hereby certify that Claimants' Reply in support of their Motion to Dismiss the Complaint complies with Local Rule 7.1(c) by not exceeding 3,500 words. The total number of words in the aforementioned Memorandum of Law is 3,305.

*/s/ Patrick F. Linehan*
Patrick F. Linehan