UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>$3,435,676.57 IN UNITED STATES CURRENCY HELD IN GENERAL LEDGER ACCOUNT NO. 4050720 AT WELLS FARGO BANK, N.A., FORMERLY ON DEPOSIT IN ACCOUNT NO. 2502560838 ASSOCIATED WITH OCEAN STUDIOS CALIFORNIA LLC, AND ANY AND ALL FUNDS TRACEABLE THERETO, INCLUDING ACCRUED INTEREST,<br><br>       Defendant-*in-rem*. | 24-CV-9189 (RA)<br><br>OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

  This civil forfeiture action arises out of the December 2019 sale of a music studio named Ocean Studios Burbank (the "Music Studio"), which the government alleges was conducted for the benefit of sanctioned Russian national Oleg Vladimirovich Deripaska, in violation of the International Emergency Economic Powers Act (the "IEEPA"). The government commenced this action on December 2, 2024, seeking to forfeit the proceeds of the sale. Before the Court is Claimants Pavel Ezubov and Sparticle Ltd.'s joint motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion to dismiss is denied.

## BACKGROUND

  The following facts are drawn from the allegations set forth in the Complaint and the documents attached thereto, *see* ECF No. 1, and are taken as true for the purposes of this motion to dismiss. As alleged in the Complaint, in January 2008, the Music Studio was purchased by an

entity named Ocean Studios California LLC ("OSC").  Compl. ¶ 18.a.  OSC was owned, in turn, by Ocean Studio Ltd. ("Studio Ltd.").  *Id.* ¶ 18.b.  Studio Ltd.'s formation documents list Ezubov—Deripaska's cousin—as its director, and state that its initial 100 shares were issued "in favor of" Deripaska.  *Id.*  The escrow settlement statement for the purchase of the Music Studio indicated that payment was made by Tangril Equities Ltd. ("Tangril"), an entity controlled by Deripaska, *id.* ¶¶ 18.a, 18.e.

From 2013 through 2018, Ezubov, along with non-party Olga Shriki, "helped to operate and fund the Music Studio on behalf of Deripaska."  *Id.* ¶ 18.f.  For example, in February 2014, Ezubov and Shriki exchanged emails in which they discussed notifying Deripaska of issues at the Music Studio.  *Id.* ¶ 18.g.  Similarly, in September 2014, Shriki sought information regarding the Music Studio's finances, noting that "Mr. D"—which the government alleges was a reference to Deripaska—was "in town" and would "ask [her] about this."  *Id.* ¶ 18.i.  In March 2016, Shriki and Ezubov communicated with a musician about the alleged theft of the musician's equipment from the Music Studio.  *Id.* ¶ 18.j.  According to the Complaint, the musician wrote that he was "informed that OVD"—Deripaska's initials—"would reimburse [him] personally for the items taken."  *Id.*  During the same period, the Music Studio received a total of $460,000 in transfers from Tangril, which Deripaska controlled.  *Id.* ¶ 18.l.

On April 6, 2018, the Office of Foreign Assets Control ("OFAC"), an arm of the Department of Treasury, designated Deripaska as a Specially Designated National and Blocked Person ("SDN") (the "Designation Date").  Accordingly, pursuant to the IEEPA and applicable OFAC regulations, as of April 6, 2018, it was unlawful for any person to "mak[e] any contribution or provision of funds, goods, or services by, to, or for the benefit of" Deripaska, or to "recei[ve]

2

any contribution or provision of funds, goods, or services" from Deripaska. 31 C.F.R. § 589.201(b).

Pursuant to a document dated April 27, 2018, Hospina Ltd. ("Hospina"), which Ezubov owns, took control of the shares of Studio Ltd. and thereby assumed ownership of the Music Studio. *Id.* ¶ 18.c.[1] Notwithstanding this purported change in ownership, the government alleges that, after the Designation Date, the Music Studio continued to receive funding from Deripaska and operated for his benefit. For almost a year after the Designation Date, the Music Studio received funds from a Russian bank account held by Sparticle Ltd. ("Sparticle"), which—at least as of January 2017—had been controlled by Deripaska. *Id.* ¶ 18.p. In July 2019, transfers to the Music Studio from Sparticle ceased, and it began to receive funds from Global Consulting Services LLC ("GCS"), an entity Shriki created a year prior that received funds from entities associated with Deripaska. *Id.* ¶¶ 18.k, 18.n, 18.r.

Shriki continued to work for Deripaska long after the Designation Date, including by routing payments through GCS for expenses associated with the care of Deripaska's child in the United States—conduct for which she was indicted in this district. *See id.* Ex. A. During that period, in 2019, she also worked to facilitate the sale of the Music Studio and its assets. *Id.* ¶ 18.s. In June 2019, she liquidated the Music Studio's contents, the proceeds of which were paid into GCS's bank account. *Id.* ¶ 18.v. The following month, OSC—the Music Studio's direct owner— listed as its principal address the same address used by GCS. *Id.* ¶ 18.t. In September 2019, Shriki sent a real estate services firm a letter of authorization, signed by Ezubov, that authorized GCS to represent and sign on behalf of the Music Studio. *Id.* ¶ 18.w. In November 2019, she arranged for payment for the purchase of the Music Studio to be sent to GCS's office. *Id.* ¶ 18.x. The Music

---

[1] On February 12, 2018, the Music Studio received a transfer from an account held by Hospina. *Id.* ¶ 18.m.

3

Studio was sold the following month for a price of $3,350,000. *Id.* ¶ 18.y.

In 2020, while still employed by Deripaska, Shriki attempted to transfer the proceeds of the Music Studio's sale from OSC's bank account at Wells Fargo to a Russian account held by Sparticle. *See id.* ¶¶ 18.aa–cc. In the course of those efforts, she provided to Wells Fargo an operating agreement for OSC that listed her as one of its officers. *Id.* ¶¶ 18.bb. After several unsuccessful attempts to transfer the funds, in March 2021, Wells Fargo blocked OSC's bank account due to its apparent relationship with Deripaska. *Id.* ¶ 18.dd.

The government commenced this action on December 2, 2024, seeking to forfeit the contents of OSC's blocked Wells Fargo account (the "Defendant Property") pursuant to 18 U.S.C. § 981(a)(1)(C) as proceeds traceable to violations of the IEEPA. *See* ECF No. 1. On February 3, 2025, Sparticle and Ezubov ("Claimants") asserted interests in the Defendant Property pursuant to Rule G(5)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* ECF Nos. 10, 11. On February 24, 2025, Claimants jointly filed the instant motion to dismiss the Complaint, *see* ECF No. 13, which the government has opposed, *see* ECF No. 27 ("Opp'n").

**LEGAL STANDARD**

Motions to dismiss *in rem* forfeiture actions are governed by Federal Rule of Civil Procedure 12(b) and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See United States v. Two Hundred Seventy-Two Thousand Dollars & No Cents ($272,000)*, No. 1:16-CV-06564, 2018 WL 948752, at *2 (E.D.N.Y. Feb. 16, 2018). When considering a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). "[O]nly a complaint that

4

states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 72.[2]

Supplemental Rule E(2)(a) mandates that the government set forth its claims in the complaint "with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Supplemental Rule G(2)(f) further requires the government to "state sufficiently detailed facts to support a reasonable belief that [it] will be able to meet its burden of proof at trial." At trial, the government must prove "by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "Accordingly, the Government's complaint must assert specific facts supporting an inference that the property is subject to forfeiture." *United States v. $22,173.00 in U.S. Currency*, 716 F. Supp. 2d 245, 248 (S.D.N.Y. 2010) (collecting cases). This standard does not require the government "to allege in the complaint all of the facts and evidence at its disposal." *Id.* "The issue is one of pleading, not proof, and '[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property.'" *United States v. $32,507.00 in U.S. Currency*, No. 14-CV-5118, 2014 WL 4626005, at *1 (S.D.N.Y. Sept. 16, 2014) (quoting 18 U.S.C. § 983(a)(3)(D)). Thus, "[a]t the pleading stage, it is sufficient for the government to simply plead enough facts for the claimant to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *Two Hundred Seventy-Two Thousand Dollars*, 2018 WL 948752, at *2.

---

[2] Unless otherwise indicated, this opinion and order omits all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

**DISCUSSION**

Pursuant to 18 U.S.C. § 981(a)(1)(C), the government may forfeit "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting specified unlawful activity," which includes violations of the IEEPA, *see* 18 U.S.C. § 1956(c)(7). Pursuant to the IEEPA, it is "unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued" thereunder. 50 U.S.C. § 1705(a). As discussed above, OFAC's designation of Deripaska as an SDN made it unlawful for any person to "mak[e] any contribution or provision of funds, goods, or services by, to, or for the benefit of" Deripaska, or to "recei[ve] any contribution or provision of funds, goods, or services" from Deripaska. 31 C.F.R. § 589.201(b). Claimants argue that the Complaint must be dismissed because it fails to allege (1) that either Deripaska or an entity he owned was involved in the subject transactions; or (2) any direct benefit to Deripaska from the sale of the Music Studio, and instead relies solely on circumstantial evidence of his involvement. These arguments are unpersuasive.

Claimants' first argument fails because the forfeitability of the Defendant Property does not depend solely on whether Deripaska or a Deripaska-owned entity was the intended direct recipient of the funds. The nature of Deripaska's interest in Sparticle may be relevant at a later stage in this litigation. But as the Complaint makes clear, and as the government stated in its opposition, *see* Opp'n at 10, it asserts a different theory of forfeitability—namely, that the sale of the Music Studio was a service provided to Deripaska in violation of OFAC regulations, and that the proceeds of the sale are traceable to that violation. The government's reliance on that theory does not render the Complaint deficient.

With respect to Claimants' second argument, the Court notes as an initial matter that

Congress has instructed courts that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D). Nothing in the heightened pleading requirement applicable to *in rem* forfeiture actions requires the government to plead facts establishing the forfeitability of subject property with absolute certainty. *See $22,173.00 in U.S. Currency*, 716 F. Supp. 2d at 248 ("[T]he Government is not required to allege in the complaint all of the facts and evidence at its disposal."). Rather, the government need only "state sufficiently detailed facts to support a reasonable belief that [it] will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). It is well-established that the government may satisfy that burden through circumstantial evidence. *See United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) ("[T]he government is entitled to prove its case solely through circumstantial evidence.").

      The Complaint alleges sufficient facts to support an inference that the sale of the Music Studio was conducted for the benefit of Deripaska. It clearly and plausibly alleges that Deripaska owned the Music Studio prior to the Designation Date, and that Shriki and Ezubov managed the Music Studio on Deripaska's behalf during that time. Moreover, it describes in detail how, after the Designation Date, the Music Studio continued to receive funds from entities connected to and/or funded by Deripaska, including Sparticle and GCS. Finally, it asserts that Shriki's efforts to wind down and sell the Music Studio coincided with her unlawful provision of services to Deripaska through GCS, for which she was indicted. According to the Complaint, these activities overlapped to such an extent that (1) GCS acted as the Music Studio's authorized agent; (2) Shriki was appointed an officer of OSC; (3) she used the same address for both GCS and the Music Studio; and (4) GCS's bank account received both the proceeds of the sale of the Music Studio's contents, and transfers from entities controlled by Deripaska. Taken together, these allegations

support the inference that the Music Studio's continued operation and sale were conducted at Deripaska's behest and for his ultimate benefit, making the Defendant Property subject to forfeiture. The Complaint is thus sufficiently detailed for Claimants "to understand the theory of forfeiture, to file a responsive pleading, and to undertake an adequate investigation." *Two Hundred Seventy-Two Thousand Dollars*, 2018 WL 948752, at *2.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is denied. The Clerk of Court is respectfully directed to terminate the motion pending at ECF No. 13.

SO ORDERED.

Dated:   August 12, 2025
         New York, New York

_____
Ronnie Abrams
United States District Judge